TYSON, Judge.
 

 *648
 

 *175
 
 Defendants appeal from an order granting Plaintiffs' motion for partial summary judgment and entry of judgment for liability and permanent injunction in favor of Plaintiffs. The judgment: (1) ordered Defendants to provide premium-free 80/20 "Enhanced" or Base Medicare Advantage Plan health benefits for the remainder of Plaintiffs' retirements; (2) enjoined Defendants from charging Plaintiffs for health insurance premiums; (3) required Defendants to determine monetary damages to reimburse Plaintiffs who had paid premiums since 1 September 2011, and to deposit the money into a common fund; (4) entered a declaratory judgment finding retirement health benefits are contractual and a part of Plaintiff's deferred compensation; and, (5) concluded Defendants had breached this contract with Plaintiffs. We reverse and remand.
 

 *176
 

 I. Background
 

 The General Assembly extended health care insurance benefits ("State Health Plan") to retired state employees and their dependents in 1974 under an indemnity plan. Act of April 11, 1974, ch. 1278, sec. 1,
 
 1973 N.C. Sess. Laws 454
 
 . The State Health Plan previously had been provided only to active state employees. Act of July 20, 1971, ch. 1009, sec. 1,
 
 1971 N.C. Sess. Laws 1588
 
 . From the outset of coverage, retirees were required to pay "the established applicable premium for the plan[.]" Act of April 11, 1974, ch. 1278, sec. 1,
 
 1973 N.C. Sess. Laws 454
 
 . In 1981, the General Assembly amended the statutes related to the State Health Plan and provided for active employees and retirees to receive health insurance benefits "on a noncontributory basis." Act of June 23, 1982, ch. 1398, sec. 6,
 
 1981 N.C. Sess. Laws 276
 
 , 295. Over the next thirty years, the State Health Plan's levels of benefits and coverage, deductibles, co-insurance rates, and out-of-pocket maximums were amended, and fluctuated, but retirees' benefits were provided without contribution from them.
 

 In 2005, the General Assembly authorized the State Health Plan to introduce preferred provider organization ("PPO") plans for all active and retired State employees. Act of August 11, 2005, ch. 276, sec. 29.33(a),
 
 2005 N.C. Sess. Laws 688
 
 , 1003-04. In 2006, the State Health Plan offered participants a choice of three PPO plans, with varying rates of co-insurance. Active and retired employees could choose the 70/30 PPO plan, the 80/20 PPO plan, or the 90/10 PPO plan. The 70/30 PPO and the 80/20 PPO were non-contributory. The contributory premium 90/10 PPO plan was discontinued in 2009.
 

 In 2011, the General Assembly again amended the State Health Plan to require active employees and retirees to contribute a premium to receive benefits under the 80/20 PPO plan. Act of May 11, 2011, ch. 85, sec. 1.2(a),
 
 2011 N.C. Sess. Laws 119
 
 , 120. The 70/30 PPO plan was, and still remains, premium-free for retirees, but not for active employees.
 

 Id.
 

 In 2014, the State began to offer a premium-free Medicare Advantage plan, to age-eligible members, and a Consumer-Directed Health Plan ("CDHP"). Three "Wellness Activities" were also introduced, completion of which would reduce the premium for the CDHP, and would make that plan premium-free upon the completion of all three. The "Wellness Activities" required selecting a primary care physician, completing a health assessment questionnaire, and attesting to not using tobacco products or being enrolled in a tobacco-cessation program. These "Wellness Activities" can also significantly reduce premiums under the 80/20 PPO plan. Over 75% of state retirees are eligible to enroll in the
 
 *177
 
 Medicare Advantage plan. Over 90% of retirees enrolled in either the CDHP or the 80/20 PPO plan completed all three "Wellness Activities."
 

 Plaintiffs filed a complaint against the State and related governmental Defendants in 2012, challenging the 2011 amendments and asserting the State and Plaintiffs had entered into a non-amendable contract, which entitled Plaintiffs to premium-free, non-contributory static health benefits under an 80/20 health care plan for the remainder of their lives. Plaintiffs' causes of action assert claims for: (1) breach of contract, for removing the non-contributory 80/20 PPO plan and eliminating the optional 90/10 PPO plan; (2) impairment of contract under the Constitution of the United States and North Carolina
 
 *649
 
 Constitution; and, (3) deprivation of property without due process and equal protection under the North Carolina Constitution.
 

 Defendants moved to dismiss the lawsuit in June 2012, under the theories of: (1) lack of jurisdiction over Defendants; (2) lack of subject matter jurisdiction due to the State's claim of sovereign immunity; (3) Plaintiffs' failure to exhaust all administrative remedies; and, (4) Plaintiffs' failure to state a claim upon which relief may be granted.
 

 The trial court denied Defendants' motion to dismiss in May 2013. This Court affirmed the trial court's order, denying Defendants' motion to dismiss based upon sovereign immunity, and dismissed Defendants' appeal regarding the other issues.
 
 Lake v. State Health Plan for Teachers & State Emples.
 
 ,
 
 234 N.C. App. 368
 
 , 375,
 
 760 S.E.2d 268
 
 , 274 (2014).
 

 Defendants filed a motion for partial summary judgment on the issue of liability in September 2016. Plaintiffs also filed a motion for partial summary judgment in September 2016 to resolve all issues except the issue of damages for excess out-of-pocket expenses. After a hearing, the trial court granted Plaintiffs' motion for partial summary judgment and denied Defendants' motion in an order filed 19 May 2017. Defendants timely appealed.
 

 II. Jurisdiction
 

 Defendants' appeal is from a grant of partial summary judgment. "A grant of partial summary judgment, because it does not completely dispose of the case, is an interlocutory order from which there is ordinarily no right of appeal."
 
 Liggett Grp., Inc. v. Sunas
 
 ,
 
 113 N.C. App. 19
 
 , 23,
 
 437 S.E.2d 674
 
 , 677 (1993).
 

 A party may appeal an interlocutory order if either: (1) the trial court makes a final determination regarding at least one claim and certifies there is no just reason to delay under N.C. Gen. Stat. § 1A-1, Rule 54(b) ;
 

 *178
 
 or, (2) if delaying the appeal would affect a substantial right.
 
 Id.
 
 at 23-24,
 
 437 S.E.2d at 677
 
 . The record does not include the trial court's Rule 54(b) certification. The only basis upon which Defendants' interlocutory appeal may proceed is to demonstrate a substantial right is impacted.
 

 "A substantial right is a legal right affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which [one] is entitled to have preserved and protected by law: a material right."
 
 Gilbert v. N.C. State Bar
 
 ,
 
 363 N.C. 70
 
 , 75,
 
 678 S.E.2d 602
 
 , 605 (2009) (citation and internal quotation marks omitted). In order for a party to appeal from an interlocutory order based upon a substantial right, it must show the right is substantial and "the deprivation of that substantial right must potentially work injury ... if not corrected before appeal from final judgment."
 
 Goldston v. Am. Motors Corp.
 
 ,
 
 326 N.C. 723
 
 , 726,
 
 392 S.E.2d 735
 
 , 736 (1990). Defendants assert the trial court's ruling affects a substantial right in two ways: (1) the decision prevents the State from enforcing its statutes; and, (2) the decision imposes significant economic impacts upon the state budget.
 

 The trial court granted a permanent injunction to enforce its order. The order requires Defendants to provide to Plaintiffs either the 80/20 PPO plan as it was offered in 2011, or the Base Medicare Advantage Plan, as it was offered in 2014, or their equivalents, for the remainder of their retirements. Defendants were enjoined from collecting any premiums from Plaintiffs for those plans. This order prevents the State from enforcing the 2011 statutory amendments on premium rates for contributory coverage.
 
 See
 
 Act of May 11, 2011, ch. 85, sec. 1.2(a),
 
 2011 N.C. Sess. Laws 119
 
 , 120.
 

 The Supreme Court of North Carolina has held a defendant's right to carry out its statutory duties is substantial.
 
 Gilbert
 
 ,
 
 363 N.C. at 77
 
 ,
 
 678 S.E.2d at 606
 
 . When a public entity is prevented from carrying out its statutory duties, the "continuance of the injunction in effect and the denial of the motion to dismiss ... do adversely affect important rights" of that entity.
 
 Freeland v. Greene
 
 ,
 
 33 N.C. App. 537
 
 , 540,
 
 235 S.E.2d 852
 
 , 854 (1977). Further, the protection of the financial stability of the state budget is also a substantial right, which carries the potential injury of a budget crisis.
 

 *650
 

 Dunn v. State
 
 ,
 
 179 N.C. App. 753
 
 , 757,
 
 635 S.E.2d 604
 
 , 606 (2006).
 

 Because Defendants are enjoined from enforcing duly-enacted statutory provisions requiring state retirees to pay premiums for certain levels of health coverage, and the cost of this premium-free health insurance at those higher levels could severely impact the state budget, we allow this interlocutory appeal pursuant to N.C. Gen. Stat. § 7A-27(b)(3)(a) (2017).
 

 *179
 

 III. Standard of Review
 

 "When the party bringing the cause of action moves for summary judgment, he must establish that all of the facts on all of the essential elements of his claim are in his favor[.]"
 
 Steel Creek Dev. Corp. v. James
 
 ,
 
 300 N.C. 631
 
 , 637,
 
 268 S.E.2d 205
 
 , 209 (1980). This rule requires the movant to "show that there are no genuine issues of fact; that there are no gaps in his proof; that no inferences inconsistent with his recovery arise from his evidence; and that there is no standard that must be applied to the facts by the jury."
 
 Kidd v. Early
 
 ,
 
 289 N.C. 343
 
 , 370,
 
 222 S.E.2d 392
 
 , 410 (1976).
 

 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56.
 

 We review a grant of summary judgment
 
 de novo
 
 .
 
 Charlotte-Mecklenburg Hosp. Auth. v. Talford
 
 ,
 
 366 N.C. 43
 
 , 47,
 
 727 S.E.2d 866
 
 , 869 (2012).
 

 IV. Impairment of Contract
 

 North Carolina appellate courts "presume[ ] that statutes passed by the General Assembly are constitutional, and duly passed acts will not be struck unless found [to be] unconstitutional beyond a reasonable doubt."
 
 N.C. Ass'n of Educators v. State
 
 ,
 
 368 N.C. 777
 
 , 786,
 
 786 S.E.2d 255
 
 , 262 (2016) [hereinafter
 
 NCAE
 
 ] (citations omitted). Plaintiffs argued, and the trial court found, the 2011 amendment to the General Statutes requiring active state employees and retirees to contribute a premium for the 80/20 PPO plan substantially impaired a contract made between the State and Plaintiffs, and as such, violated the Constitution of the United States.
 

 The "Contract Clause" in the Constitution of the United States provides, in relevant part: "No State shall ... pass any ... Law impairing the Obligation of Contracts[.]" U.S. Const. art. I, § 10. A three-part test to determine whether a contractual right has been impaired was set forth by the Supreme Court of the United States in
 
 U.S. Trust Co. of N.Y. v. New Jersey
 
 ,
 
 431 U.S. 1
 
 ,
 
 97 S.Ct. 1505
 
 ,
 
 52 L.Ed.2d 92
 
 (1977).
 

 North Carolina adopted this test in
 
 Bailey v. State
 
 ,
 
 348 N.C. 130
 
 ,
 
 500 S.E.2d 54
 
 (1998), when our Supreme Court acknowledged "[t]he
 
 U.S. Trust
 
 test requires a court to ascertain: (1) whether a contractual obligation is present, (2) whether the state's actions impaired that contract,
 
 *180
 
 and (3) whether the impairment was reasonable and necessary to serve an important public purpose."
 

 Id.
 

 at 141
 
 ,
 
 500 S.E.2d at 60
 
 .
 

 Defendants argue Plaintiffs cannot prevail on their Contract Clause claim and contend the trial court erred by granting Plaintiffs' motion for summary judgment on that basis. We agree.
 

 A. No Statutory Contractual Obligation Exists
 

 Plaintiffs assert health insurance is an employment benefit, which arose in the course of state employment, and constitutes a part of the compensation contract between the State and state employees. Furthermore, because the employees did not have to pay any premiums for health insurance during their service, after vesting for retirement benefits, Plaintiffs assert they also acquired a lifetime guarantee of premium-free health insurance in retirement. They contend when the State required premium payments, it impaired their employment contract or took their vested property rights to premium-free, 80/20 level health care. They further argue our courts have employed a unilateral contract analysis, not only in "retirement benefits," but also to "employment benefits," such as tenure, special separation allowances, severance pay, and vacation pay.
 

 *651
 

 NCAE
 
 ,
 
 368 N.C. 777
 
 ,
 
 786 S.E.2d 255
 
 (applying the analysis to tenure);
 
 Wiggs v. Edgecombe Cty.
 
 ,
 
 361 N.C. 318
 
 ,
 
 643 S.E.2d 904
 
 (2007) (applying the analysis to special separation allowances);
 
 Bolick v. Cty. of Caldwell
 
 ,
 
 182 N.C. App. 95
 
 ,
 
 641 S.E.2d 386
 
 (2007) (applying the analysis to severance pay);
 
 Pritchard v. Elizabeth City
 
 ,
 
 81 N.C. App. 543
 
 ,
 
 344 S.E.2d 821
 
 (1986) (applying the analysis to vacation pay).
 

 The Supreme Courts of the United States and of North Carolina have both "recognized a presumption that a state statute 'is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.' "
 
 NCAE
 
 ,
 
 368 N.C. at 786
 
 ,
 
 786 S.E.2d at
 
 262 (citing
 
 Dodge v. Bd. of Educ.
 
 ,
 
 302 U.S. 74
 
 , 79,
 
 58 S.Ct. 98
 
 , 100,
 
 82 L.Ed. 57
 
 , 62 (1937) ).
 

 "Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body."
 
 Nat'l R.R. Passenger Corp. v. Atchison, T. & S. F. R. Co.
 
 ,
 
 470 U.S. 451
 
 , 466,
 
 105 S.Ct. 1441
 
 , 1451,
 
 84 L.Ed.2d 432
 
 , 446 (1985).
 

 Our Supreme Court has held: "Construing a statute to create contractual rights in the absence of an expression of unequivocal intent would be at best ill-advised, binding the hands of future sessions of the legislature and obstructing or preventing subsequent revisions and
 
 *181
 
 repeals."
 
 NCAE
 
 ,
 
 368 N.C. at 786
 
 ,
 
 786 S.E.2d at 262-63
 
 . The party asserting the creation of an express or implied and unamenable contract bears the burden of overcoming this presumption.
 
 Id.
 
 at 786,
 
 786 S.E.2d 255
 
 ;
 
 Nat'l R.R.
 
 ,
 
 470 U.S. at 466
 
 ,
 
 105 S.Ct. 1441
 
 , 1451-52,
 
 84 L.Ed.2d at 446
 
 .
 

 1. Health Care Benefits Are Not Analogous to Pension Benefits
 

 Plaintiffs contend this unilateral contract, requiring the provision of noncontributory and prescribed levels of health care insurance benefits, was formed once Plaintiffs had worked for the number of years required for them to vest into the State's retirement system. Plaintiffs cite to case law pertaining to and interpreting pension and disability retirement benefits to support their argument. In
 
 Bailey v.
 

 State
 
 , the plaintiffs challenged an amendment to the General Statutes, which had removed the exemption from state taxation on retirement benefits paid by the State.
 
 348 N.C. at 139
 
 ,
 
 500 S.E.2d at 59
 
 .
 

 The Supreme Court in
 
 Bailey
 
 relied upon previous cases where a contractual relationship was found based on "the principle that where a party in entering an obligation relies on the State, he or she obtains vested rights that cannot be diminished by subsequent state action."
 

 Id.
 

 at 144
 
 ,
 
 500 S.E.2d at 62
 
 . Previous case law had concluded pension benefits were a vested contractual right because they were a form of "deferred compensation."
 

 Id.
 

 at 141
 
 ,
 
 500 S.E.2d at 60
 
 . The Court held because the "relationship between the Retirement Systems and employees vested in the system is contractual in nature, the right to benefits exempt from state taxation is a term of such contract."
 

 Id.
 

 at 150
 
 ,
 
 500 S.E.2d at 66
 
 .
 

 Our Supreme Court applied the same reasoning to disability pension benefits in
 
 Faulkenbury v. Teachers' & State Emples. Ret. Sys.
 
 ,
 
 345 N.C. 683
 
 ,
 
 483 S.E.2d 422
 
 (1997). "At the time the plaintiffs' rights to pensions became vested, the law provided that they would have disability retirement benefits calculated in a certain way."
 
 Id.
 
 at 690,
 
 483 S.E.2d at 427
 
 . The Supreme Court distinguished the vesting of both pension and disability benefits as benefits that had been presently earned and vested through performance, and not "based upon future actions by the plaintiffs."
 
 NCAE
 
 ,
 
 368 N.C. at 788
 
 ,
 
 786 S.E.2d at 264
 
 .
 

 Plaintiffs argued, and the trial court found, that non-contributory retirement health care insurance benefits were part of the overall compensation package and the provision of such created a contract between the State and Plaintiffs. Defendants assert the State Health Plan statute does not create a contractual relationship between the State and Plaintiffs. Whether or not non-contributory health care insurance
 
 *182
 
 benefits are vested
 
 *652
 
 rights, which create a contract between the State and state employees, is an issue of first impression for this Court. After review of the governing statutes and how other jurisdictions have defined health care benefits, we decline to extend contractual rights based upon a notion of deferred compensation to require Defendants to provide static and non-contributory health care insurance benefits under the State Health Plan.
 

 Pension benefit costs are shared contributions and expenses between an employee and the State. A mandatory six percent (6%) of salary is deducted from the employee's paycheck to be deposited towards payment of future pension benefits.
 
 N.C. Gen. Stat. § 135-8
 
 (b)(1) (2017). The employee's future pension benefit is calculated based upon the employee's salary and length of service.
 
 See
 

 N.C. Gen. Stat. § 135-5
 
 (2017). These future, deferred compensation payments are protected from abolition, liquidation, or diminution by law.
 
 N.C. Gen. Stat. § 135-12
 
 (2017) ;
 
 Bailey
 
 ,
 
 348 N.C. at 144
 
 ,
 
 500 S.E.2d at 62
 
 . Employees have a "nonforfeitable" right to the return of their contributions to the retirement system.
 
 N.C. Gen. Stat. § 135-18.6
 
 (2017).
 

 Conversely, non-contributory health care insurance benefits are not mandatory. Employees become "eligible" for health care benefits upon employment and may use payroll deduction to pay for the benefits, but are not required to do so.
 
 N.C. Gen. Stat. §§ 135-48.1
 
 (15), 135-48.2(b) (2017). Unlike pensions, the level of retirement health care benefits is not dependent upon an employee's position, retirement plan, salary, or length of service. All eligible participants, active and retired, have equal access to the same choices in health care plans. The State endeavors to "make available a State Health Plan," but amendments thereto are not prohibited.
 
 N.C. Gen. Stat. § 135-48.2
 
 (a) (2017) ;
 
 see also
 

 N.C. Gen. Stat. § 135-48.3
 
 (2017).
 

 2. Sister States' Experiences
 

 i. Michigan
 

 Other jurisdictions have found health care insurance benefits were not vested benefits, unlike pensions, based upon some of the distinctions above. The Supreme Court of Michigan declined to afford vested pension protection to health care benefits under their state's constitution, in part, due to differences in how the benefits were earned and calculated.
 
 Studier v. Mich. Pub. Sch. Emples. Ret. Bd.
 
 ,
 
 472 Mich. 642
 
 ,
 
 698 N.W.2d 350
 
 (2005). In distinguishing pension benefits and health care insurance benefits, the court noted pension benefits increase in relation to how many years of service a state employee has completed and their
 
 *183
 
 salary, whereas neither the amount of health care benefits an employee received nor the premiums paid are tied to an employee's salary or the accrued number of years of service.
 

 Id.
 

 at 358
 
 .
 

 ii. Tennessee
 

 The Supreme Court of Tennessee also distinguished between the health insurance plan offered to state employees, which it classified as a "welfare benefit," and the retirement pension plan provided to state employees.
 
 Davis v. Wilson Cty.
 
 ,
 
 70 S.W.3d 724
 
 , 727 (Tenn. 2002). County governments were authorized to provide health insurance coverage, but there was no legal requirement to provide a "welfare benefit" plan.
 

 Id.
 

 The court relied upon previous case law, distinguishing between automatically vesting pension benefits and health care benefits, noting as to the latter, "no contractual rights exist 'simply by reason of employment.' "
 

 Id.
 

 at 728
 
 (quoting
 
 Blackwell v. Quarterly Cty. Court of Shelby Cty.
 
 ,
 
 622 S.W.2d 535
 
 , 540 (Tenn. 1981) ).
 

 iii. Alaska, Hawaii, and Illinois
 

 The Plaintiffs cite cases from other jurisdictions to support a conclusion that the State Health Plan is part of the overall retirement package, and thus subject to vesting. All three cases Plaintiffs cite,
 
 Kanerva v. Weems
 
 ,
 
 383 Ill.Dec. 107
 
 ,
 
 13 N.E.3d 1228
 
 (2014),
 
 Everson v. State
 
 ,
 
 228 P.3d 282
 
 (Haw. 2010), and
 
 Duncan v. Retired Pub. Emples. of Alaska, Inc.
 
 ,
 
 71 P.3d 882
 
 (Alaska 2003), involve interpretation of provisions that are contained in those states' respective constitutions.
 

 Each state's constitution includes specific language asserting the contractual nature of the states' retirement programs.
 
 See
 
 Illinois Const., Art. XIII, § 5 ("Membership in any
 
 *653
 
 pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof,
 
 shall be
 
 an enforceable contractual relationship, the benefits of which shall not be diminished or impaired.") (emphasis supplied); HRS Const. Art. XVI, § 2 ("Membership in any employees' retirement system of the State or any political subdivision thereof
 
 shall be
 
 a contractual relationship, the accrued benefits of which shall not be diminished or impaired.") (emphasis supplied); Alaska Const. Art. XII, § 7 ("Membership in employee retirement systems of the State or its political subdivisions
 
 shall constitute
 
 a contractual relationship. Accrued benefits of these systems shall not be diminished or impaired.") (emphasis supplied).
 

 These cases are inapplicable to the issue of the relationship between retirement pensions and health care benefits in North Carolina. First,
 
 *184
 
 North Carolina's Constitution does not contain a specific provision mandating a contractual relationship exists between the State and its employees as participants in the state retirement systems.
 

 Second, each of the states in the cases cited by Plaintiffs have statutes mandating the provision of health care benefit plans to state employees.
 
 See
 
 5 Ill. Comp. Stat. Ann. 375/10 (2005 & Supp. 2012) ("The State
 
 shall
 
 pay the cost of basic non-contributory group life insurance and ... the basic program of group health benefits on each eligible member") (emphasis supplied); Haw. Rev. Stat. Ann. § 87A-15 (Supp. 2009) ("The board
 
 shall
 
 administer and carry out the purpose of the fund. Health and other benefit plans
 
 shall
 
 be provided at a cost affordable to both the public employers and the public employees.") (emphasis supplied);
 
 Alaska Stat. Ann. § 39.30.095
 
 (a) (2010) ("The commissioner of administration
 
 shall
 
 establish the group health and life benefits fund as a special account in the general fund to provide for group life and health insurance") (emphasis supplied).
 

 As stated above, the provision of static, non-contributory health insurance benefits are not mandated by North Carolina's Constitution or in the General Statutes.
 
 N.C. Gen. Stat. § 135-48.2
 
 (a). Plaintiffs' reliance on these other states' cases as persuasive support is misplaced.
 

 The General Assembly has clearly distinguished between the mandatory retirement benefits and the optional health care insurance benefits the statutes have historically provided. The retirement system was enacted and created in 1941. Act of February 17, 1941, ch. 20, sec. 2,
 
 1941 N.C. Sess. Laws 20
 
 , 23. Health care benefits were not provided to any state employees until thirty years later, in 1971, and were only authorized for active employees of the State. Act of July 20, 1971, ch. 1009, sec. 1,
 
 1971 N.C. Sess. Laws 1588
 
 . As previously mentioned, health care coverage was extended to qualified retirees in 1974, and these retirees were required to pay for premiums and contribute to the costs. Act of April 11, 1974, ch. 1278, sec. 1,
 
 1973 N.C. Sess. Laws 454
 
 . Non-contributory retirement health care benefits only began in 1981. Act of June 23, 1982, ch. 1398, sec. 6, N.C. Sess. Laws 276, 295. Every other substantive change to the State Health Plan occurred after 1981.
 

 The trial court's purported decision, and Plaintiffs' attempt on appeal, to conflate and equate the retirement plan and the health care plan, because both are included in Chapter 135 of the General Statutes, is error. No congruent relationship between the retirement benefits and the health care benefits exists to allow the trial court or this Court to construe and conclude an express and unalterable contractual relationship
 
 *185
 
 exists, on any basis, for the State to provide static and non-contributory health care insurance benefits to retirees.
 

 3. Statutory Language Does Not Expressly Provide for Vesting
 

 Plaintiffs assert the lack of express contractual language in the statute or North Carolina's Constitution is not determinative. Defendants cite to the lack of contractual language in the State Health Plan, which further supports a finding and conclusion that no contract exists.
 
 NCAE
 
 ,
 
 368 N.C. at 787
 
 ,
 
 786 S.E.2d at 263
 
 . We find Defendants' argument persuasive.
 

 *654
 
 Plaintiffs rely upon cases that look to additional evidence, such as pamphlets, handbooks, and oral representations, to support a finding of a contractual relationship. In
 
 Stone v. State
 
 ,
 
 191 N.C. App. 402
 
 ,
 
 664 S.E.2d 32
 
 (2008), this Court looked to pamphlets, distributed by the State to its employees to explain the retirement benefits, to support its holding that State employees have a contractual right to have the retirement system funded in an "actuarially sound manner."
 
 Id.
 
 at 414-15,
 
 664 S.E.2d at 40
 
 .
 

 This Court found the statements in those pamphlets, including references to "actuarial calculations" and the retirement system being maintained as "actuarially sound," became a term or condition of the retirement contracts.
 
 Id.
 
 at 414,
 
 664 S.E.2d at 40
 
 . We have already distinguished the differences between the mandatory and contributory retirement benefits and the State's policy to offer optional health care benefits.
 
 Stone
 
 has no application to the case at bar.
 

 The other cases Plaintiffs cite for support,
 
 Bailey
 
 ,
 
 348 N.C. at 146
 
 ,
 
 500 S.E.2d at
 
 63 ;
 
 Bolick
 
 ,
 
 182 N.C. App. at 100-01
 
 ,
 
 641 S.E.2d at
 
 390 ; and
 
 Pritchard
 
 ,
 
 81 N.C. App. at 552-53
 
 ,
 
 344 S.E.2d at 826-27
 
 , fail to support their arguments for similar reasons.
 

 Our Supreme Court, following precedent from the Supreme Court of the United States, has found whether or not a statute contains the word "contract" is critical to find legislative intent to create such a relationship.
 
 NCAE
 
 ,
 
 368 N.C. at 787
 
 ,
 
 786 S.E.2d at 263
 
 . The statutes governing the State Health Plan do not refer to a "contract" between the employees and the State. The term "contract"
 
 is
 
 used in the statute to describe the relationship between the State Health Plan and its service providers.
 
 E.g.
 
 ,
 
 N.C. Gen. Stat. § 135-48.1
 
 (3) (2017) ("Claims Processor. -- One or more administrators, third-party administrators, or other parties
 
 contracting
 
 with the Plan to administer Plan benefits") (emphasis supplied);
 
 N.C. Gen. Stat. § 135-48.10
 
 (b) (2017) ("The terms of a
 
 contract
 
 between the Plan and its third party administrator or between the Plan
 
 *186
 
 and its pharmacy benefit manager are public record") (emphasis supplied);
 
 N.C. Gen. Stat. § 135-48.12
 
 (f) (2017) ("The Committee shall designate either the actuary under
 
 contract
 
 with the Department of State Treasurer, Retirement Systems Division, or the actuary under
 
 contract
 
 with the State Health Plan for Teachers and State Employees as the technical adviser") (emphasis supplied);
 
 N.C. Gen. Stat. § 135-48.33
 
 (b) (2017) ("The Plan shall: (i) submit all proposed
 
 contracts
 
 for supplies, materials, printing, equipment, and contractual services ... for review") (emphasis supplied).
 

 The use of contractual language in the statute in reference to service providers indicates the General Assembly specified situations and knew when to use the word "contract," and it did not intend to form a contractual relationship between the State and its employees related to health care insurance benefits.
 
 See
 

 NCAE
 
 ,
 
 368 N.C. at 787
 
 ,
 
 786 S.E.2d at 263
 
 . The use of contractual language elsewhere in the statute merely indicates the provisions and benefits in the statute is "an articulated policy that, like all policies, is subject to revision or repeal[,]" as the General Assembly has enacted on many prior occasions.
 
 See
 

 Nat'l R.R.
 
 ,
 
 470 U.S. at 467
 
 ,
 
 105 S.Ct. at 1452
 
 ,
 
 84 L.Ed.2d at 447
 
 .
 

 In fact, the statute contains and reserves an express right to amend provision, which empowers the General Assembly "the right to alter, amend, or repeal" the State Health Plan.
 
 N.C. Gen. Stat. § 135-48.3
 
 . This express reservation by the General Assembly "is hardly the language of contract."
 
 Nat'l R.R.
 
 ,
 
 470 U.S. at 467
 
 ,
 
 105 S.Ct. at 1452
 
 ,
 
 84 L.Ed.2d at 447
 
 . To construe this clear language of the statute to create a contractual relationship "would be at best ill-advised, binding the hands of future sessions of the legislature and obstructing or preventing subsequent revisions and repeals" and would remove the flexibility required to meet changing conditions, benefits, and future advances in rendering and receiving medical and health-related services.
 
 NCAE
 
 ,
 
 368 N.C. at 786
 
 ,
 
 786 S.E.2d at 262-63
 
 .
 

 The State Health Plan has undergone multiple and extensive revisions since its initial enactment in 1971.
 
 See
 
 Act of July 20, 1971, ch. 1009, sec. 1,
 
 1971 N.C. Sess. Laws 1588
 
 . The General Assembly reserved this power
 
 *655
 
 "to alter, amend, or repeal" in the same legislation that provided premium-free health care benefits to retirees. Act of June 23, 1982, ch. 1398, sec. 1,
 
 1983 N.C. Sess. Laws 276
 
 , 311. The General Assembly has exercised this reserved power to revise and amend approximately 200 times without challenge since 1983. As part of the record, Defendants included a nine-page document cataloguing these revisions. Some of these changes were minor, and often "clarified" some aspect of the legislation.
 
 See, e.g.
 
 , Act of July 15, 1986, ch. 1020, sec. 24, 26,
 
 1985 N.C. Sess.
 

 *187
 

 Laws 594
 
 , 597 (clarifying covered services must be "medically necessary," not just "necessary").
 

 Some changes added benefits. Coverage was often added for various ailments and procedures.
 
 See, e.g.
 
 , Act of July 6, 1984, ch. 1110, sec. 11,
 
 1984 N.C. Sess. Laws 300
 
 , 305-06 (adding coverage for chemical dependency); Act of June 27, 1991, ch. 427, sec. 41,
 
 1991 N.C. Sess. Laws 833
 
 , 850 (providing coverage for lung, heart-lung, and pancreas transplants ); Act of July 28, 1995, ch. 507, sec. 7.26,
 
 1995 N.C. Sess. Laws 1525
 
 , 1574 (adding coverage for oral surgery necessitated because of medical treatment).
 

 Many other amendments arguably reduced the type and level of benefits. Many of these changes increased the amount of co-insurance and co-pays that beneficiaries were required to cover.
 
 See, e.g.
 
 , Act of May 16, 1985, ch. 192, sec. 1-4,
 
 1985 N.C. Sess. Laws 157
 
 (reducing co-insurance rate from 95% to 90%); Act of June 27, 1991, ch. 427, sec. 19, 33,
 
 1991 N.C. Sess. Laws 833
 
 , 843, 848 (reducing co-insurance rates from 90% to 80%). Other changes raised the deductible or increased the out-of-pocket maximums.
 
 See, e.g.
 
 , Act of June 28, 2001, ch. 253, sec. 1.(b), 1.(c), 1.(f), 1.(m),
 
 2001 N.C. Sess. Laws 663
 
 -64, 666, 670-71; Act of August 11, 2005, ch. 276, sec. 29.31(b), (d),
 
 2005 N.C. Sess. Laws 1001
 
 , 1002-03.
 

 This "oft-amended course" of statutory amendments is further evidence of the lack of intent by the State to create an unalterable static contract.
 
 NCAE
 
 ,
 
 368 N.C. at 788
 
 ,
 
 786 S.E.2d at 264
 
 . Such extensive revisions support a holding that the establishment and maintenance of the North Carolina State Health Plan is a legislative policy, which is expressly and "inherently subject to revision and repeal" by the General Assembly.
 
 Nat'l R.R.
 
 ,
 
 470 U.S. at 466
 
 ,
 
 105 S.Ct. at 1451
 
 ,
 
 84 L.Ed.2d at 446
 
 .
 

 Plaintiffs ignore the more than 200 unchallenged amendments and revisions, and contend the right to amend provision in the statute is inapplicable to cases that involve vested rights and deferred compensation. Based upon our conclusion and holding that the State Health Plan is not a vested right nor a contract for deferred compensation like the pension, this argument is without merit. Plaintiffs' argument that the State Health Plan must be allowed to change as health care evolves, but cannot reduce the "value" of what has been vested is specious, and also fails.
 

 In addition to the State Health Plan not being a vested right, the General Assembly has often amended, altered, and reduced the "value" of the benefit offered by increasing co-insurance rates, co-pays, and out-of-pocket maximums or excluding coverage. Plaintiffs erroneously
 
 *188
 
 contend Defendants' arguments pertaining to the statutory right to amend provision are "tired," and have been struck down by both the trial court and this Court. When the matter was previously before this Court, the sole issue decided concerned the applicability of sovereign immunity.
 
 Lake
 
 ,
 
 234 N.C. App. at 375
 
 ,
 
 760 S.E.2d at 274
 
 . This Court did not reach either Plaintiffs' or Defendants' arguments on the merits.
 

 Id.
 

 The trial court erred in holding a contractual relationship existed between the State and its employees in regards to the provision of unalterable and static noncontributory health insurance benefits to Plaintiffs.
 

 B. No Impairment of Contract
 

 To succeed on an impairments claim under the Contract Clause, asserting the State impermissibly impaired a contract, Plaintiffs must first show the existence of a valid contract.
 
 Bailey
 
 ,
 
 348 N.C. at 141
 
 ,
 
 500 S.E.2d at 60
 
 . Only upon a showing of a contractual obligation can the courts proceed to the second and third parts of the analysis: whether the State, in fact, impaired the contract
 
 *656
 
 and, if so, whether the impairment was reasonable.
 

 Id.
 

 Plaintiffs failed to carry their burden to prove the existence of a valid contract, and consequently the existence of any valid claim fails.
 
 See
 

 NCAE
 
 ,
 
 368 N.C. at 786
 
 ,
 
 786 S.E.2d at 262-63
 
 . The trial court erred by granting partial summary judgment in favor of Plaintiffs.
 

 V. No "Taking" Under State Constitution
 

 At summary judgment, Plaintiffs asserted claims under the "Law of the Land" clause of the North Carolina Constitution. This clause provides, in relevant part: "[n]o person shall be ... in any manner deprived of his ... property, but by the law of the land." N.C. Const. art. I, § 19. A contractual right is a property right, and the impairment of a valid contract is an impermissible taking of property.
 
 Bailey
 
 ,
 
 348 N.C. at 155
 
 ,
 
 500 S.E.2d at 69
 
 .
 

 The trial court erroneously concluded a contractual relationship existed, and as a result, also concluded Defendants had violated Article I, section 19 of the Constitution and taken Plaintiffs' private property without just compensation. "For an unconstitutional taking to occur, Plaintiffs must have a recognized property interest for the State to take."
 
 Adams v. State
 
 , --- N.C. App. ----, ----,
 
 790 S.E.2d 339
 
 , 344 (2016). Without a valid contract, Plaintiffs' state constitutional claims also fail.
 

 Id.
 

 The trial court erred in granting partial summary judgment on Plaintiffs' state takings claims. Neither party argues any violations of other state constitutional provisions.
 

 *189
 

 VI. Conclusion
 

 Plaintiffs failed to establish the essential elements of their asserted contract, as is required to support an impairments claim in their favor.
 
 See
 

 Steel Creek Dev. Corp.
 
 ,
 
 300 N.C. at 637
 
 ,
 
 268 S.E.2d at 209
 
 . The vested, contractual rights state employees enjoy under the state retirement plan do not transfer to and are not congruent with the provision of mandatory premium-free benefits under the State Health Plan.
 

 The plain language of the statute prohibits a finding and conclusion of the General Assembly's intent to create an unalterable contractual relationship between the State and active or retired employees in regards to static provisions in the State Health Plan. In fact, the Constitution's and the statutes' omission of contractual language, the General Assembly's express statutory reservation of the right to amend clause, and the hundreds of unchallenged revisions and amendments to the statute in the past, refutes any contrary finding.
 

 An objective reading of the State Health Plan statute, and the extensive statutory amendments since 1981, indicates retired state employees are promised nothing more than equal access to health care benefits on an equal basis with active state employees. Under the current statute revisions and policy regarding the State Health Plan, retirees still have access to at least one premium-free option, the 70/30 plan, and, if qualified, to the premium-free Medicare Advantage plan. Active state employees have no premium-free health care options.
 

 The State endeavors to "make available a State Health Plan."
 
 N.C. Gen. Stat. § 135-48.2
 
 (a). Making available and providing access does not create any specific contractual financial obligation.
 
 See
 
 id.
 

 Without a showing of a valid contractual financial obligation, Plaintiffs claims under either the Contract Clause of the Constitution of the United States or the Law of the Land clause of the North Carolina Constitution fail. The trial court erred in granting partial summary judgment in favor of Plaintiffs.
 

 We reverse the grant of partial summary judgment and remand for entry of summary judgment in favor of Defendants and dismissal of Plaintiffs' complaint.
 
 It is so ordered.
 

 REVERSED AND REMANDED.
 

 Judges BRYANT and HUNTER concur.